UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| LEROY HAMLETT AND MARSHA HAMLETT, <br><br> Plaintiffs, <br><br> v. <br><br> CARROLL FULMER LOGISTICS CORPORATION, STEVEN GEORGE SWARTZ AND PROTECTIVE INSURANCE COMPANY, <br><br> Defendants. | Case No. CV415-001 |

## **ORDER**

After he returned from his overseas military deployment in 2014, Sergeant First Class Leroy Hamlett crashed his motorcycle into a truck driven by George Swartz and owned by Swartz's employer, Carroll Fulmer Logistics Corporation (CFLC).[1]  Doc. 1-1 at 3; doc. 55 at 4. Georgia State Patrol Trooper Robert L. Scott, Jr. examined the scene just after the accident and found Swartz at fault.  The crash occurred on

---

[1]  For the purpose of this Order, the Court is accepting as true the factual assertions lifted from the cited pleadings above.

a four-lane road in Richmond Hill, Georgia. Hamlett had the right-of-way but Swartz made a left turn from his oncoming lane, causing Hamlett to collide with his truck's front end. *See* doc. 37-2 at 89 (official accident report diagram). Scott issued an O.C.G.A. § 40-6-73 (failure to yield) citation to Swartz, who paid the fine. Doc. 1-1 at 3; doc. 55 at 4; doc. 68 at 13. Hamlett and his wife (consortium claim) sued Swartz, CFLC, and CFLC's insurer. Doc. 1-1.[2] He seeks compensatory and punitive damages, plus O.C.G.A. § 13-6-11 attorney fees and costs.[3] *Id.*

---

[2] Defendants have

> admitted "Swartz was making a left turn and while in the process of turning, Plaintiff struck the front of the tractor sustaining injuries. Defendants admit[ted] Defendant Swartz's negligence contributed to the cause of this accident and some injury to Plaintiff. . . ." (Doc. 7, ¶¶ 12, 15 & 17). Defendants admitted "Swartz turning left violated Georgia law under the circumstances." (Doc. 7, ¶¶ 23-24). Defendants further admitted Swartz was in scope of his employment with Carroll Fulmer and the applicability of the doctrine of respondeat superior. (Doc. 7, ¶ 16). Defendants "reserve[d] for trial the questions of contributory/comparative negligence and damages" as well as "the issue of proximate cause as to any damages which may be claimed that are not related to the accident", but otherwise admitted the material allegations of the complaint regard and the accident. (Doc. 7, ¶ 12, 15, 17, 18 & 19).

Doc. 35-1 at 4. But defendants insist that

> Plaintiff should have been able to first see at least the top half of Swartz's tractor trailer from 500 or more feet from the accident scene. (Sloan deposition, page 72, lines 1 through 25). Plaintiff could have perceived Swartz's tractor trailer in a stopped position and beginning its turn from about 200 feet from the accident scene. (Sloan deposition, page 76, lines 6 through 11; page 192, lines 4 through 24). Plaintiff could have brought his motorcycle to a stop from 200 feet assuming Plaintiff was traveling 30 mph.

The defendants move for summary judgment against plaintiff's punitive damage and attorney fee claims. Docs. 34, 35 & 40. They also move to exclude expert witness Jeffrey Alan Kidd's testimony about his calculations and diagrams because he failed to produce them with his written report by the Court's disclosure deadline. Doc. 38. Finally, they move to exclude from trial Scott's testimony on these topics: whether Hamlett was a cause of the accident; the percentage of Swartz's fault; whether Hamlett should have avoided Swartz's tractor trailer; and Hamlett's alleged speed at impact. Doc. 37. The summary judgment motions are before the district judge. The exclusion motions are reached here.

---

(Sloan deposition, page 193, lines 3 through 6).

*Id.* at 7. Hamlett concedes that his contributory negligence is a jury issue: "As Hamlett approached the intersection, he had the right of way, and Defendant Swartz negligently failed to yield to Hamlett's motorcycle, causing the collision. Defendant Swartz received and pled guilty (by bond forfeiture) to the ticket of 'Failure to Yield Entering Highway,' in violation of O.C.G.A. § 40-6-73. Defendants have admitted fault in this action, and to *contributing* to Plaintiffs' injuries." Doc. 68 at 5; *see also id.* at 7 (defendants' portion of pretrial order: "Sergeant Hamlett does not remember what happened, but his motorcycle was capable of stopping quickly and in a very short distance. Because he was riding a high performance motorcycle, Mr. Hamlett had room to stop."); *id.* at 17 (defendants insist that "Comparative Negligence/Avoidance of Consequences" principles apply to the trial of this case).

[3] For convenience, the Court hereafter will refer only to Hamlett, not his wife, and thus reference just Hamlett -- as "the plaintiff."

3

# I. ANALYSIS

## A. Kidd's Testimony

Hamlett hired Kidd as an accident reconstruction expert who, unsurprisingly, lays all the blame on Swartz. Doc. 25 at 3. His report supplies only the sources he'd been provided to review, then states his conclusions: that Swartz's failure to keep a proper lookout and yield while turning left (he turned into Hamlett's path) "is the sole cause of this collision." *Id.* His report was incomplete, defendants contend, when it was disclosed to them by the Court's July 23, 2015 deadline.[4] Doc. 38-1. They insist he should not be permitted to supplement it after that deadline, during his deposition. Rule 26, they remind, prohibits procrastination and sandbagging.[5] Doc. 38-1.

---

[4] *See* doc. 31 at 1 (Scheduling Order); *see also* Fed. R. Civ. P. 16(b)(3)(B)(i), 26(a)(2)(D) (district court may set time limits for disclosure of expert witness testimony).

[5] As has been explained:

Rule 26(a)(2) requires that a report, signed by the expert witness, must accompany the disclosure of each expert witness. This report *must* contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the data or other information considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and

Hamlett counters that Kidd's report was only technically deficient. He expresses surprise at the defendants' objection. The parties, he explains, have worked harmoniously on this matter, conferring in early August 2015 to schedule Kidd's deposition for September 3, 2015. Doc.

---

testimony in the case. Fed.R.Civ.P. 26(a)(2)(B). A party must make these disclosures at the time and in the sequence that the court orders. Fed.R.Civ.P. 26(a)(2)(D).

*Abdulla v. Klosinski*, 898 F. Supp. 2d 1348, 1357 (S.D. Ga. 2012) (emphasis added). For that matter:

An expert report is deemed adequate when it is "sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996). The duty to disclose expert identities and opinions set out under Rule 26(a)(2) was implemented "to accelerate the exchange of basic information," specifically to provide "opposing parties [with] a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed.R.Civ.P. 26 advisory committee's note (1993). The contours and demands of that duty must be understood "in a manner to achieve those objectives." *Id.*

*Id.* at 1357-58; *see also id.* at 1358 (ultimately, an expert's report should provide the opposing party with notice and an opportunity to prepare its case; a report consisting primarily of legal conclusions does not suffice); *Butler v. Goodyear Tire & Rubber Co.*, 2014 WL 7272604 at * 3 (S.D. Ga. Dec. 18, 2014) ("The brazen approach here -- ignoring the disclosure deadline, then offering up an empty-headed [expert witness] at his deposition, then moving to 'continue' it -- is simply not acceptable.").

Finally, Rule 26(e)(2) requires that "[f]or an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to the information included in the report and to the information given in the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due. *See also* Rule 26(e)(1) (duty to timely correct or complete incorrect or incomplete disclosures). Thus, the rules and case law require timely disclosure and timely supplementation; trial by ambush is not permitted. Nor are reports that are blatantly untimely or rely on supplementation to dodge a deadline.

45 at 4. He says he fully complied with defendants' Notice to Produce on that deposition, and on August 24, 2015 -- the week before Kidd's deposition -- the defendant's produced their accident reconstructionist's (James Sloan's) report. *Id.* at 4-5. Hamlett provided that report to Kidd, who thus was able to respond and be cross-examined about it in defendants' lengthy deposition of him. *Id.*[6] "Just as Mr. Kidd, Sloan produced his file at his deposition," and "Mr. Sloan thoroughly critiqued Mr. Kidd's opinions during his deposition." Doc. 45 at 6.

Too, Hamlett reminds, defendants failed to object on untimeliness grounds, even during Kidd's deposition. In fact, they waited until over a month after Hamlet deposed Sloan (on September 28, 2015) to complain. Doc. 45 at 5-6. Plaintiff represents that "[t]he parties appeared to be working together to efficiently manage expert discovery without this Court's involvement. It is only four months later that [d]efendants raise any issue with Mr. Kidd's report." *Id.* at 6.

Hamlett makes some valid points. Some flexibility in the discovery process is tolerable, depending on the circumstances. And some

---

[6] Defendants also disclosed a police accident video to Hamlett, so he gave that to Kidd, too. Kidd, in turn, produced diagrams and calculations that Hamlett disclosed to the defendants. Doc. 45 at 5.

objections can seem nit-pickish. Defendants, for that matter, concede that they did not object to Kidd's report when they first received it. Doc. 61 at 1. But that's because, they explain, they had no objections to Kidd's report at that time. They object now only to *new* opinions that Kidd first presented in his deposition (filed at doc. 38-4).

So, they conclude, Kidd can testify that Swartz failed to yield while turning left, turned into Hamlett's path, and -- on that basis only -- is the sole cause of the collision. Doc. 61 at 1-2. But they object to and want to exclude the new opinions that Kidd supplied at his deposition, including testimony about Hamlett's ability to perceive and react to avoid the accident. That, they insist, violates what Rule 26(a)(2)(B)(i) otherwise requires: a "complete statement of *all* opinions the witness will express and the basis and reasons for them. . . ." *Id.* (emphasis added); *see also id.* (expert reports must include "how" and "why" the expert reached a particular result, not merely the expert's conclusory opinions).

The Court agrees. The defendant's showing (doc. 61 at 3-7, 8-11) is unrebutted. Rule 26(a)(2) deters procrastination and sandbagging.[7]

---

[7]  Other courts have barred conclusion-only reports like Kidd's outright, then refused gap-filling via deposition. For example:

Hamlett did both. It is unacceptable to make a party wait, and thus be surprised, at a deposition. Hamlett provides no satisfactory explanation for missing the deadline here, and the defendants were prejudiced because they were denied, prior to the deposition, the full opportunity to digest Kidd's information and formulate their deposition questions based on the same. To permit procrastinators to point to deposition questions as proof of no prejudice is to neuter the rule and deny adversaries the full benefit of pre-deposition, question-preparation time, if not the option to

Here, the Court finds that Davis's one-line *ipse dixit* conclusion that State Farm's claims handling procedures violate the No–Fault Act, which is found in her initial report (the only timely report filed by the Clinic Defendants), woefully fails to satisfy Rule 26's requirements. Davis's report does nothing to provide any link whatsoever between her conclusion and the pieces of evidence and law that she purportedly reviewed. She simply ignored Rule 26(a)(2)(B)(i)'s requirement that she provide a "complete statement" of the basis and reasons for her conclusions.

\*     \*     \*     \*

The Court also rejects the argument that the Clinic's failure to provide a Rule 26-compliant report is harmless in the face of State Farm's apparent ability to depose her. The whole purpose of Rule 26's expert report requirement is to alleviate a party's need to depose an expert witness prior to trial and "shorten or decrease the need for expert depositions and thus to conserve resources." [*R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010)]. To find that the Clinic Defendants' clear failure to tender a proper expert report is harmless solely because the expert could later be deposed would turn the rule on its head and essentially render it a nullity. The Court does not find that the Clinic Defendants' submission of Davis' report is harmless.

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, 2014 WL 10294798 at \* 3, 4 (E.D. Mich. June 16, 2014). Hence, "harmless error" assertions cannot salvage unjustified supplementation. *Id.* at \* 4.

obviate a deposition expense outright. *See supra* n. 7. Hence, Kidd will not be permitted to testify on the distance traveled by either vehicle, the time it took for both to impact, or Hamlett's ability to perceive and react to Swartz's truck.[8] Defendants' exclusion motion is thus **GRANTED**.[9]

## B. Scott's Testimony

To reiterate, Trooper Scott investigated the accident, ticketed Swartz, and opined that Swartz is 100% at fault. Doc. 37-1 at 2, 4 (citing doc. 37-2 at 45-46). Defendants move to exclude only some of his

---

[8] Such testimony can figure into the very avoidance defenses that the defendants have raised. *See* doc. 68 at 17; *see also* GA. LAW OF TORTS § 16:2 ("Last clear chance as combating contributory negligence") (Dec. 2015); *Booth v. Brewster*, 318 Ga.App. 401, 402 (Ga. App. 2012); *Laroche v. CSX Transportation, Inc.*, 2015 WL 5179011 at * 7 (S.D. Ga. Sept. 3, 2015) ("In Georgia, '[i]f the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover.' Ga.Code Ann. § 51–11–7.").

[9] As has been explained:

"The district court has broad discretion in determining whether a violation is justified or harmless." *Catalina Rental Apts., Inc. v. Pacific Ins. Co.*, No. 06–20532–CIV, 2007 WL 1050634, at *2 (S.D.Fla. Apr. 03, 2007). "[I]n exercising its broad discretion to determine whether a [Rule 26 violation] is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Two Men and a Truck Int'l, Inc. v. Res. & Commercial Trans. Co.*, No. 4:08–cv–067, 2008 WL 5235115, at *2 (N.D. Fla. Oct. 20, 2008) (quoting *S. States Rack & Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)).

*Abdulla*, 898 F. Supp. 2d at 1359.

opinions -- those they insist fail the admissibility standard established by Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).[10]  Doc. 37-1 at 2.  They "do not seek to exclude or limit Scott's testimony regarding his accident scene observations, investigation results, or other non-speculative, fact-based testimony. However, [they] do seek to exclude certain testimony by Scott which is unsupported by the evidence and his investigation and is basically a guess or conjecture on Scott's part." *Id.* They illuminate the fact that:

---

[10]  Federal Rule of Evidence 702 assigns the trial court a gatekeeping role to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589 & 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) ("*Daubert's* general holding -- setting forth the trial judge's general 'gatekeeping' obligation -- applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge.") (quoting Rule 702). As noted in *Nicholson v. Pickett*, 2016 WL 854370 at * 4 (M.D. Ala. Mar. 4, 2016), the "rigorous three-part inquiry" for assessing the admissibility of expert testimony under Rule 702 asks whether:

> (1) [T]he expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quotes and cite omitted). These are the "qualifications," "reliability," and "helpfulness" prongs. *Id.* "The burden of establishing [the three prongs] rests on the proponent of the expert opinion," *id.*, and they must be shown by a preponderance of the evidence. *Nicholson*, 2016 WL 854370 at * 4 (quote and cite omitted); *see also United States v. McGill*, ___ F.3d ___, 2016 WL 790413 at *46 (D.C. Cir. Mar. 1, 2016) ("The proponent of the expert testimony bears the burden to establish the admissibility of the testimony and the qualifications of the expert.").

"Scott *speculates* Plaintiff was not travelling at or near the speed limit of 45 miles per hour." *Id.* at 4 (emphasis added).

"Scott has no knowledge of Plaintiff's ability to perceive and react to Swartz's tractor trailer." *Id.* at 5.

"Scott blindly assumes Plaintiff attempted to avoid Swartz's tractor." *Id.* at 6.

Hence, they want to prevent Scott from testifying about Hamlett's alleged speed at impact plus his inability to perceive and react to Swartz's tractor trailer at any time before impact. They also want to block his testimony consisting of, and in support of, the following conclusions:

1. Plaintiff did not cause or contribute to this accident;

2. Plaintiff was a 100% victim, thus Swartz was 100% at fault for the accident;

3. Plaintiff attempted to avoid Swartz's tractor before the accident occurred.

Doc. 37-1 at 7 (renumbered).

From *Daubert*-applying cases like *Kumho*, *Roper v. Kawasaki Heavy Industries, Ltd.*, 2016 WL 1085489 at * 2 (11th Cir. Mar. 21, 2016), *Green Party of Ga. v. Kemp*, 2016 WL 1057022 at * 4 n. 8 (N.D. Ga. Mar. 17, 2016), *Emery v. Talladega College*, 2016 WL 880038 at * 2 (N.D. Ala. Mar. 8, 2016), and *Rudd v. Gen. Motors Corp.*, 127 F. Supp. 2d

1330, 1342 (11th Cir. 2001) (recognizing that the expert's ability to settle on a cause "through a process of eliminating alternative possible causes is, by a preponderance of the evidence, a reliable one"), useful *"Daubert* questions" can be distilled to evaluate contemplated expert testimony:

1. Is the opinion based on concrete data or testing?

2. Are the conclusions logically supported by the facts of the case?

3. Did the expert rely on testimony which itself was unreliable?

4. If he has posited an experience-based opinion, as opposed to a purely scientific opinion,[11] is it based on the same level of intellectual rigor that characterizes the practice of an expert in the relevant field?

5. Did the expert fail to explain how his experience led him to the conclusions he reached?

6. Does his testimony rest on too great an analytical gap between the data and the opinion proffered?

---

[11] *See Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC,* 555 F.3d 1331, 1338 (11th Cir. 2009) ("Standards of scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony," and a court has discretion to deem expert testimony reliable based upon personal knowledge or experience); *Clay v. Ford Motor, Co.,* 215 F.3d 663, 668-69 (6th Cir. 2000) (reliance on depositions, reports, statements, and photographs is a reliable and accepted methodology under *Daubert*); *Reid v. BMW of N. Am.,* 430 F. Supp. 2d 1365, 1370 (N.D. Ga. 2006) (reminding that if an expert's testimony based on his own personal experiences and analysis of the evidence are deemed reliable, any attacks against such testimony go toward the weight of the testimony and not its admissibility), cited in *Nicholson,* 2016 WL 854370 at * 11; *Green v. Five Star Mfg., Inc.,* 2016 WL 1243757 at * 6 (N.D. Ala., Mar. 30, 2016) ("it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence, but to see if how an expert got to where he ended up makes reasoned, scientific sense") (quotes, cites and alterations omitted).

7. Does his testimony help the trier of fact by offering something more than a lawyer's closing argument?

8. Have other courts considered his testimony and found him to be a reliable witness?

Finally, even if expert testimony does not meet all or most of the *Daubert* factors, it "may sometimes be admissible." *United States v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005). Some flexibility is applied in reliability determinations, *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004), and it is "not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Haynes v. Lawrence Transp. Co.*, 2015 WL 5601942 at * 2 (N.D. Ga. Mar. 24, 2015) (quotes and cite omitted). Hence, "[t]he rules relating to *Daubert* issues are not precisely calibrated and must be applied in case-specific evidentiary circumstances that often defy generalization." *Brown*, 415 F.3d at 1266. But inferences spiced with educated guesses wrapped in speculation will not suffice. *Swinney v. Schneider Nat'l Carriers, Inc.*, 829 F. Supp. 2d 1358, 1363 (N.D. Ga. 2011).

Citing Scott's "extensive training and experience in accident investigations," doc. 46 at 3, Hamlett notes that Scott arrived on the accident scene shortly after the accident, walked it, examined and

photographed the physical evidence and interviewed witnesses. *Id.* at 4.

Hamlett emphasizes that defendants' expert, Sloan, agrees with Scott's

decision to cite Swartz for failing to yield. *Id.* They also agree that speed

is not a contributing factor for either driver. *Id.* at 4-5. Indeed, says

Hamlett, defendants' motion is "much ado about nothing" because

"[t]here is only one material difference between Sloan's and Trooper

Scott's conclusions." *Id.* at 5. Scott, says plaintiff, opines that:

> Hamlett should have identified Defendants' tractor-trailer as a
> hazard only after Swartz wrongfully entered Hamlett's lane of
> travel. At that point, it was too late for Hamlett to do anything to
> avoid the collision, even with an evasive maneuver. Sloan, the
> expert hired by Defendants, disagrees with that opinion, and only
> that opinion -- opining Hamlett should have identified the tractor-
> trailer as a hazard considerably sooner.

Doc. 46 at 5.

Scott's deposition supports the *defendants* here. He testified that

he has been a Georgia State Patrol trooper since 2011, doc. 37-2 at 8, and

has since been "a lead investigator on hundreds of accidents," *id.* at 11-

12, though that quantification must be temporized (he was deposed on

March 25, 2015, doc. 37-2 at 1, and the accident he investigated here

occurred on June 17, 2013, *id.* at 23, so he had only about two years'

experience when he analyzed the instant accident). Scott completes his

14

accident reports, as he did in this case, *id.* at 86-89, within three days of his investigation. *Id.* at 12. As part of his investigation, he assesses the factors that contribute to a collision. *Id.* at 13.

Scott was just "five or six miles away" when the instant collision occurred on June 17, 2014. Doc. 37-2 at 15. Once he got to the accident scene, he "observed the vehicle damage, the traffic, the roadway, and began talking to [local] police officers." *Id.* at 19. He then applied his "standard investigation techniques," which consisted of interviewing witnesses and examining the physical and roadway evidence. *Id.* at 21-22. Hamlett, he concluded, is 100% blameless, and Swartz 100% blameworthy for the accident. *Id.* at 26, 45-46.

But Scott also conceded that there were no skid marks from either vehicle, doc. 37-2 at 47, 61-62, and he could only speculate whether there were any tall trucks to obstruct Hamlett's ability to see Swartz's truck just before the collision. *Id.* at 58-59. Nor did he know: if Hamlett applied his motorcycle's brakes prior to impact, *id.* at 62, how far Hamlett was from the truck's front when it entered into Hamlett's traffic lane, *id.* at 62-63, the weight of Swartz's tractor/trailer, how fast it was going at the time of impact, or how long it takes to stop a

tractor/trailer at any speed. *Id.* at 48. Scott also did not know what he could have measured that day, but did not -- the actual tractor/trailer's height (vital to the issue whether Hamlett should have seen it). *Id.* at 49. He could cite only the maximum amount permitted by regulations. *Id.*

These points figure into Scott's concession that he could only *speculate* that Hamlett would have seen Swartz "[i]f they were all passenger cars" in his line of view. Doc. 37-2 at 49. He also admitted that he lacked knowledge whether Swartz had started to cross the road from a stop, *id.* at 50, or, in light of his estimate that Hamlett had been traveling at 45 mph, what his stopping distance was. *Id.* In fact, Scott had no training in perception/reaction times, much less specific training in motorcycle accidents. *Id.* He also conceded this:

> Q. Do you know -- have any estimate how long it would have taken the tractor/trailer once it started to make the left turn to travel to the point of impact that you've noted of four feet north of the eastbound fog line?
>
> A. No estimate of time. I mean --
>
> Q. And based on that do you have any estimate of how far away Mr. Hamlett was when the tractor/trailer began the left-hand turn?
>
> A. No, sir, no estimate at all.
>
> Q. You would agree with me that all motorists under Georgia law are required to keep a lookout for potential hazards?

A. Yes.

*Id.* at 51.  And this:

> Q.  Do you know how much time Mr. Hamlett had to perceive and react to the tractor/trailer once it started making the left turn?
>
> A.  I do not.
>
> Q.  Do you think that's important to know in determining whether or not Mr. Hamlett should have taken evasive action?
>
> A.  I mean, it has no -- that would be hard to say.  I mean, it's different in every crash or collision.  That driver is not expecting something to be in its path. . . .

*Id.* at 54-55 (objection omitted).

The Court agrees with the defendants, who don't question Scott's experience to investigate the accident, only his "training or experience to provide opinions about whether Hamlett had sufficient time to perceive or react."  Doc. 60 at 10.   Scott's own deposition testimony shows that he "lacks training or experience in calculating speed[12] or performing time

---

[12]   He did measure the motorcycle's "final resting place to the tractor/trailer": 17 feet.  Doc. 37-2 at 40.  His "momentum analysis" informed him that Hamlett "could not have been traveling at a high rate of speed, more than likely at the speed limit or less."  *Id.*  But because there were no skid marks "I don't have a particular speed" for Hamlett's motorcycle at that moment, "but *probably* he was going at the speed limit or less."  *Id.* at 41 (emphasis added).  This testimony immediately followed:

and distance calculations and did not even attempt any such calculations." *Id.* (footnoted added). As can be seen from his "momentum" analysis, he failed to fill-in-the-blank on how he could determine Hamlett's pre-impact speed merely by the post-impact, 17-foot distance between the two vehicles (*e.g.*, if any part of motorcycle's "momentum travel" was affected by whether its handle, kickstand or muffler, if not Hamlett itself dragged along the ground with it). Nor did he offer any reliable methodology to support the conclusion that plaintiff lacked sufficient time to perceive, react, and avoid the collision. *Id.* Scott mentioned *no* engineering principles or calculations, much less how he utilized them to support his conclusions. *Id.* As Scott himself said:

> It's just -- it's a lot of stuff to try and picture all at once time and decide, hey, you're at fault or you're not at fault and you all have to do that within a few minutes. You know, you don't have -- you can't stand at an accident scene all day. You got to -- you got to sit there, hurry up, work, get your statements from everybody that was there, your statements from the drivers, you look at your

---

Q. When you say -- you got calculations to come up with precise speed?

A. They are but I have not been trained on that. That gets into crush factor of your vehicle.

Q. But you have been trained on momentum?

A. That's correct.

*Id.*

18

damage, you look at the vehicles, and you look at the roadway evidence and you try and put it all together.

Doc. 37-2 at 23.

The foregoing deposition testimony thus answers -- in the negative -- most all of the above-noted *"Daubert* Questions." Hence, Scott's testimony in support of the above-noted conclusions rests on too great an analytical gap between the data and the opinion offered. Also, he has failed to explain how his experience fills in that gap. *Cf. Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (a court "cannot admit an expert who simply states that he used the 'scientific method' to reach his conclusions; more is required."). Nor have other courts found such testimony reliable (Hamlett has cited none). And his testimony on these points is not offering the jury any more than a lawyer's closing argument. Finally, all of Hamlett's cases and cites are distinguishable (*e.g.*, Fed. R. Evid. 803(8) applies only to public records; Scott's *deposition* opinions are found in none, *see* doc. 37-2 at 86-89).

The above-highlighted testimony is therefore excluded. *See Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1330 (11th Cir. 2014) (medical causation expert's testimony excluded as unreliable, in product liability

case alleging that failure of manufacturer to equip vehicle with fuel shut-off switch led to driver's death from traumatic brain injury; expert failed to explain how his experience and relevant literature supported his opinion, only vaguely described his methodology, and was unable to express opinion about how multiple collisions with parked vehicles and house subsequent to initial collision with truck would have affected driver); *Swinney* 829 F. Supp. 2d at 1363 (engineer's opinions regarding vehicle accident in which husband died were unreliable, and, therefore, not admissible in wife's negligence action against truck driver and driver's employer; opinions were based on unspecified "actual testing" and review of scene photographs, films, and deposition, but provided nothing more than a summary of what he *presumed* to have happened); *see also id.* ("[P]laintiff suggests that [her expert's] general experience in the field of accident reconstruction renders his opinion reliable. However, plaintiff does not explain why [his] experience is a sufficient basis for his opinion, or how his experience has been reliably applied to the facts of this particular case."). Scott therefore is barred from opining on whether Hamlett was a cause of the accident; the percentage of Swartz's fault; whether Hamlett could or should have avoided Swartz's

tractor trailer, and Hamlett's alleged speed at impact.[13]

## II. CONCLUSION

The Court **GRANTS** defendants' exclusion motions. Docs. 37 & 38.

**SO ORDERED,** this 6ᵗʰ day of April, 2016.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[13] Defendants also argue that Hamlett violated Rule 26(a)(2)(C)(ii), which required him to provide "a summary of the facts and opinions to which the witness [one who otherwise independently provides no written report] is expected to testify." *Swinney*, 829 F. Supp. 2d at 1363; *see also Curbow v. Nylon Net Co., Inc.*, 2008 WL 4186919 at *5 (W.D. Mo. Sept. 5, 2008) (excluding, under Rule 26(a)(2)(C)(ii), the untimely disclosure of additional testing by expert, deemed "neither substantially justified nor harmless," and noting "that a continuance for further discovery would unduly postpone the trial date.") (citing *Wegener v. Johnson*, 527 F.3d 687, 691 (8th Cir. 2008). "The district court may exclude the information or testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless.")). Hamlett shows that he disclosed him, including an arguably deficient summary of his expected testimony, in March 2015, then again in July, 2015 (incorporating his deposition testimony). *See* doc. 46 at 15-16 (citing doc. 46-2 at 4; doc. 46-3 at 3). In light of the above result, it is not necessary to resolve this issue.