# In the United States District Court for the Southern District of Georgia Savannah Division

LEROY HAMLETT and MARSHA
HAMLETT,

     Plaintiffs,

     v.

CARROLL FULMER LOGISTICS
CORPORATION, STEVEN GEORGE
SWARTZ, and PROTECTIVE
INSURANCE COMPANY,

     Defendants.

\*       CV 415-001

## ORDER

This matter comes before the Court on Defendant Carroll Fulmer Logistics Corporation's ("CFLC") Motion for Partial Summary Judgment (dkt. no. 34), Defendant Steven Swartz's ("Swartz") Motion for Partial Summary Judgment (dkt. no. 35), and Defendant Protective Insurance Company's ("PIC") Motion for Summary Judgment (dkt. no. 40). For the reasons set forth below, CFLC's Motion for Partial Summary Judgment (dkt. no. 34) is **GRANTED in part** and **DENIED in part**, Swartz's Motion for Partial Summary Judgment (dkt. no. 35) is **GRANTED in part** and **DENIED in part**, and PIC's Motion for Summary Judgment (dkt. no. 40) is **GRANTED**.

## BACKGROUND

This lawsuit stems from an automobile accident that occurred at the intersection of Georgia Highway 144 and Louis C. Gill Boulevard in Bryan County, Georgia, on June 17, 2014. Dkt. No. 40-4 ¶ 1; Dkt. No. 58-1 ¶ 1. Plaintiff Leroy Hamlett was driving a motorcycle in the right eastbound lane of Georgia 144. Dkt. No. 40-4 ¶ 3; Dkt. No. 58-1 ¶ 3. At the same time, Defendant Swartz, a truck driver for Defendant CFLC, attempted to make a left turn from the westbound left turn lane of Georgia 144 onto Louis C. Gill Boulevard. Dkt. No. 40-4 ¶ 2; Dkt. No. 58-1 ¶ 2. While Swartz was making a left turn, Plaintiff struck the front of the tractor and sustained injuries. Dkt. No. 34-1 ¶ 5; Dkt. No. 55-1 ¶ 5

Lieutenant Amanda Riggs was traveling on Georgia 144 in the left lane in the same direction as Plaintiff. Dkt. No. 34-1 ¶ 9; Dkt. No. 55-1 ¶ 9. Riggs testified that she recalled between five and seven passenger vehicles between her and where Swartz's tractor trailer was turning. Dkt. No. 34-1 ¶ 10; Dkt. No. 55-1 ¶ 10. Riggs testified that Swartz was moving very slowly when he began to make his left turn. Dkt. No. 34-1 ¶ 11; Dkt. No. 55-1 ¶ 11. Staff Sergeant Roy Loudermilk was traveling east on Georgia 144 in the same direction as Plaintiff. Dkt. No. 34-1 ¶ 15; Dkt. No. 55-1 ¶ 15. Loudermilk was in the left lane about 10 to 15 vehicles from the accident location. Dkt.

AO 72A
(Rev. 8/82)

No. 34-1 ¶ 17; Dkt. No. 55-1 ¶ 17. Loudermilk, who was driving a pick-up truck, testified that the tractor trailer was taller than any other vehicle in front of him. Dkt. No. 34-1 ¶¶ 16, 20; Dkt. No. 55-1 ¶¶ 16, 20. The parties dispute whether any vehicles obstructed Plaintiff's view of Swartz and whether he had sufficient distance to perceive and react to Swartz's tractor trailer so as to brake and potentially stop prior to impact. Dkt. No. 34-1 ¶¶ 13-14, 30; Dkt. No. 55-1 ¶¶ 13-14, 30.

Trooper Robert Scott found Swartz at fault, not Hamlett.[1] Dkt. Nos. 42-1, 42-2, 42-3, & 42-8. All eyewitnesses agree, had Swartz not pulled into Plaintiff's lane, the incident would not have occurred. Dkt. Nos. 34-6 at 11, 34-5 at 19, 34-7 at 13-14, & 51, Defendant Swartz's Deposition ("Swartz Dep."), at 21. Defendants' expert James Sloan opined that Swartz misjudged the left turn such that he needed an additional 7.5 seconds to complete it safely. Dkt. No. 34-8 at 102-03. Swartz pled to the charge by paying his ticket. Dkt. No. 42-8. Hamlett was not speeding, as he was traveling 30 miles per hour in a 45 mile-per-hour zone. Dkt. No. 34-8 at 77-79; Dkt. No. 27-1 at 3. Defendants contend Plaintiff was contributorily negligent in failing to see the top of the tractor trailer driven by Swartz

---

[1] To the extent Plaintiffs' statements of fact (dkt. nos. 55-1 at 15-18, 55-2 at 16-19, & 58-1) discuss matters not addressed in those of Defendants (dkt. nos. 34-1, 35-2, & 40-4), those facts are included here, because Defendants have not objected to them. See Dkt. Nos. 62 & 63.

AO 72A
(Rev. 8/82)

as it cut across traffic. Dkt. No. 27-1 at 4; Dkt. No. 34-8 at 38-39, 133.

In December 2013, before the incident with Hamlett, Swartz was cited and paid a ticket for making an improper left turn into a retail parking lot. Swartz dep. at 26; Dkt. No. 34-9 at 26-30, 38. Swartz testified:

> I was making a left-hand turn to go into the Home Depot, it was around Christmastime, and when I was almost all the way . . . into the parking lot, . . . there was a bunch of guys there unloading Christmas trees and so forth, and all kinds of people all around, and I was being really cautious, though I didn't hit nobody in front of me, and these people said that my trailer rocked back and forth . . . .

Swartz dep. at 26. He testified that during this incident he "bumped into a car, supposedly, [he doesn't] believe that [he] did, but [he] went ahead and paid the ticket." Id. Because of the December 2013 incident, CFLC's safety director, Mark Darling, identified the need to train Swartz on "space management, left turns, following too closely, speeding," but did not. Dkt. No. 34-9 at 28-30, 38.

The parties agree that Swartz is an experienced truck driver, having driven for 10 years. Dkt. No. 34-1 ¶ 36; Dkt. No. 55-1 ¶ 36. Swartz drove trucks for multiple companies. Dkt. No. 34-1 ¶ 38; Dkt. No. 55-1 ¶ 38. Prior to driving for CFLC, he was involved in a single vehicle accident on June 3, 2008, during which he rolled over his tractor trailer. Dkt. No.

AO 72A
(Rev. 8/82)

34-1 ¶ 41; Dkt. No. 34-4 at 37; Dkt. No. 51 at 69-70; Dkt. No. 55-1 ¶ 41. In October 2012, Swartz backed into another vehicle. Dkt. No. 34-1 ¶ 49; Dkt. No. 34-4 at 9; Dkt. No. 55-1 ¶ 49. CFLC was aware of these infractions before hiring Swartz on or about July 2013 and before the automobile collision at issue in this case occurred. Dkt. No. 34-4; Dkt. No. 42-9 at 1. CFLC verified Swartz's employment in compliance with 49 C.F.R. § 391.23(a)(2),(d),(e). Dkt. No. 34-1 ¶ 54; Dkt. No. 55-1 ¶ 54. Since Swartz maintained a valid CDL, pursuant to C.F.R. § 391.33, CFLC could have accepted Swartz's CDL in lieu of a road test; however, CFLC still required Swartz to complete a road test in compliance with 49 C.F.R. § 391.31. Dkt. No. 34-1 ¶ 56; Dkt. No. 55-1 ¶ 56. Swartz passed the road test. Dkt. No. 34-1 ¶ 57; Dkt. No. 55-1 ¶ 57. Swartz maintained a valid medical examiners certificate in compliance with 49 C.F.R. § 391.43 at the time of the accident. Dkt. No. 34-1 ¶ 58; Dkt. No. 55-1 ¶ 58. CFLC provided Swartz a copy of the federal regulations. Dkt. No. 34-1 ¶ 59; Dkt. No. 55-1 ¶ 59. In compliance with 49 C.F.R. § 391.23(a)(1), CFLC obtained 3-year MVRs from both Florida and Ohio. Dkt. No. 34-1 ¶ 60; Dkt. No. 55-1 ¶ 60. In compliance with 49 C.F.R. § 391.25, Swartz completed "Violation and Review of Record" forms, which required him to identify any traffic citations resulting in a conviction or bond forfeiture for the previous 12 months. Dkt. No. 34-1

5

¶¶ 62, 63; Dkt. No. 55-1 ¶¶ 62, 63. Swartz listed the citation for improper left turn that he received in December 2013. Dkt. No. 34-1 ¶ 64; Dkt. No. 55-1 ¶ 64. In conjunction with Swartz completing this form, CFLC again obtained a 3-year MVR for Swartz, which confirmed the citation in December 2013. Dkt. No. 34-1 ¶ 65; Dkt. No. 55-1 ¶ 65. The accident at issue in this case occurred on June 17, 2014 as a result of an improper left turn by Swartz. Dkt. No. 40-4 ¶¶ 1, 2; Dkt. No. 58-1 ¶¶ 1, 2.

Hamlett and his wife, Marsha Hamlett, filed suit against Defendants Swartz, CFLC, and PIC in the Superior Court of Bryan County, Georgia on November 17, 2014, dkt. no. 1-1 at 2, and Defendants removed the action to this Court on or about January 5, 2015, dkt. no. 1 at 1, 4. Plaintiffs assert claims of negligence against Swartz, negligent hiring, retention, supervision, training, and entrustment against CFLC, and punitive damages and attorneys' fees and expenses against all Defendants. See Dkt. No. 1-1. Plaintiffs also assert Defendants are jointly and severally liable under theories of respondeat superior, vicarious liability, and agency principles. Id. ¶ 16.

Defendant Swartz moves for partial summary judgment on Plaintiffs' claims of punitive damages and attorneys' fees and costs, dkt. no. 35, dkt. no. 1-1 ¶¶ 12, 15, 17-19; Defendant CFLC moves for partial summary judgment on Plaintiffs' claims of

negligent hiring, retention, supervision, training, and entrustment, as well as Plaintiffs' claims of punitive damages and attorneys' fees and costs, dkt. no. 34, dkt. no. 1-1 ¶¶ 16, 20-22; and Defendant PIC moves for summary judgment on Plaintiffs' claims in direct action pursuant to O.C.G.A. § 40-2-140 against PIC, as well as Plaintiffs' claims for punitive damages and attorneys' fees and costs, dkt. no. 40, dkt. no. 1-1 ¶¶ 33-34.

In the Answer, Defendant Swartz and CFLC admitted "Swartz was making a left turn and while in the process of turning, Plaintiff struck the front of the tractor sustaining injuries." Dkt. No. 7 ¶ 15. Defendants admitted "Defendant Swartz's negligence contributed to the cause of this accident and some injury to Plaintiff . . . ." Id. Defendants admitted "Swartz's turning left violated Georgia law under the circumstances." Id. ¶ 23. Defendants further admitted that Swartz was in the scope of his employment with CFLC and that the doctrine of *respondeat superior* applies to this case. Id. ¶ 16. Defendants "reserve[d] for trial the questions of contributory/comparative negligence and damages" as well as "the issue of proximate cause as to any damages which may be claimed that are not related to the accident." Dkt. No. 34-1 ¶ 8; Dkt. No. 55-1 ¶ 8.

In the Answer, Defendant PIC admitted it issued CFLC "an excess indemnity contract . . . in effect on June 17, 2014."

Dkt. No. 40-4 ¶ 5; Dkt. No. 58-1 ¶ 5. The contract itself states, "This is an excess contract, and it is excess of the **self retention**, as set forth in the Declarations." Dkt. No. 40-2 at 4 (emphasis in original); see also Dkt. No. 40-4 ¶ 6; Dkt. No. 58-1 ¶ 6. The contract also states, "The Company hereby agrees to indemnify the named or related insured for ultimate net loss, less the self retention, and subject to the limit of indemnity[.]" Dkt. No. 40-2 at 4. The "self retention" amount listed in the contract is $250,000 per occurrence. Dkt. No. 40-2 at 3.

## LEGAL STANDARDS

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T.

AO 72A
(Rev. 8/82)

Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in two ways: First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for

AO 72A
(Rev. 8/82)

the defendants [is] not only proper but required." <u>Morris v.</u>
<u>Ross</u>, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R.
Civ. P. 56(e)).  Similarly, "[w]hen opposing parties tell two
different stories, one of which is blatantly contradicted by the
record, so that no reasonable jury could believe it, a court
should not adopt that version of the facts for purposes of
ruling on a motion for summary judgment." <u>Howard v. Memnon</u>, 572
F. App'x 692, 694-95 (11th Cir. 2014) (quoting <u>Scott v. Harris</u>,
550 U.S. 372, 380 (2007)).

### DISCUSSION

I.   CFLC's Partial Motion for Summary Judgment

CFLC recognizes the applicability of the *respondeat*
*superior* doctrine of liability to the negligent actions of
Swartz because he was acting within the scope of his employment.
However, CFLC moves for partial summary judgment on Plaintiffs'
claims for negligent hiring, retention, supervision, training,
and entrustment, as well as Plaintiffs' claims for punitive
damages and attorneys' fees and costs under O.C.G.A. § 13-6-11.
Dkt. No. 34.

   A. Plaintiffs' Claims of Negligence and Punitive Damages
      Against CFLC

Defendant CFLC contends it is entitled to summary judgment
on Plaintiffs' claims for negligent hiring, retention,
supervision, training, and entrustment because it admitted that

AO 72A
(Rev. 8/82)

Swartz was its agent and employee and that he was acting within the scope of his authority at the time of the accident. Thus, CFLC would be liable to Plaintiffs for Swartz's alleged negligent acts under the doctrine of *respondeat superior*. Dkt. No. 34-2 at 11. Generally, when an employer admits the applicability of *respondeat superior*, it is entitled to summary judgment on claims for negligent hiring, retention, supervision, training, and entrustment. See Durben v. Am. Materials, Inc., 503 S.E.2d 618, 619 (Ga. Ct. App. 1998); Ellis v. Old Bridge Transp., LLC, No. 4:11-CV-78 CDL, 2012 WL 6569274, at *1 (M.D. Ga. Dec. 17, 2012). The rationale for this is that, since the employer would be liable for the employee's negligence under *respondeat superior*, allowing claims for negligent hiring, retention, supervision, training, and entrustment would not entitle the plaintiff to a greater recovery, but would merely serve to prejudice the employer. Durben, 503 S.E.2d at 619.

"An exception exists for this general rule, however, where a plaintiff has a valid claim for punitive damages against the employer based on its independent negligence in hiring and retaining the employee or entrusting a vehicle to such employee." Id. "In such case, it cannot be said that the negligence claims against the employer are merely duplicative of the *respondeat superior* claim." Id. Under these circumstances, the employer is not entitled to summary judgment on the

negligent hiring, retention, supervision, training, and entrustment claims. See Ellis, 2012 WL 6569274, at *1. CFLC admits that Swartz was operating the vehicle in furtherance of CFLC's trucking business at the time of the accident. Thus, Plaintiff's negligent hiring, retention, supervision, training, and entrustment claims can only survive if Plaintiffs can sustain a claim for punitive damages on those claims. Ortiz v. Wiwi, No. 3:11-CV-00033, 2012 WL 4468771, at *3 (M.D. Ga. Sept. 12, 2012). Accordingly, the question to be resolved is whether Plaintiffs have a valid basis for punitive damages on their negligence claims.

"Clear and convincing evidence of a defendant's 'willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences' is required to warrant the imposition of punitive damages." Durben, 503 S.E.2d at 751 (citing O.C.G.A. § 51-12-5.1(b)). "It is not essential to a recovery for punitive damages that the person inflicting the damage was guilty of willful and intentional misconduct." Battle v. Kilcrease, 189 S.E. 573, 574 (Ga. Ct. App. 1936). "It is sufficient that the act be done under such circumstances as evinces an entire want of care and a conscious indifference to consequences." Id. "Whether a tort was sufficiently aggravating to authorize punitive damages is generally a jury

AO 72A
(Rev. 8/82)

question, and a jury may award punitive damages where the clear and convincing evidence only creates an inference of the defendant's conscious indifference to the consequences of the acts." Tookes v. Murray, 678 S.E.2d 209, 213 (Ga. Ct. App. 2009). However, by itself, "[n]egligence, even gross negligence, is insufficient to support such an award." Durben, 503 S.E.2d at 751.

"A plaintiff can sustain a claim for punitive damages for negligent hiring, supervision, and retention, 'only by showing that an employer had actual knowledge of numerous and serious violations on its driver's record, or at the very least, when the employer has flouted a legal duty to check a record showing such violations.'" Ortiz, 2012 WL 4468771, at *3 (quoting W. Indus. Inc. v. Poole, 634 S.E.2d 118, 121 (Ga. Ct. App. 2006)). Georgia courts have held that "punitive damages are recoverable . . . where the collision resulted from a pattern or policy of dangerous driving." Carter v. Spells, 494 S.E.2d 279 (Ga. Ct. App. 1997). On the other hand, "Georgia courts have granted summary judgment on punitive damages where the evidence shows that the employer complied with federal regulations and investigated the background of its drivers." Ortiz, 2012 WL 4468771, at *3 (citing Bartja v. Nat'l Union Fire Ins. Co. of Pittsburgh, 463 S.E.2d 358, 362 (Ga. Ct. App. 1995) (finding evidence not sufficient to award punitive damages where employer

13

complied with federal regulations and driver was qualified to drive under regulations despite driver's record showing two moving violations, a citation for driving his truck into a car parked in an emergency lane, and clipping the side mirror of an oncoming van on a two-lane highway)).

## 1. Negligent Hiring Claim

Unlike their other negligence claims, discussed *infra*, Plaintiffs' negligent hiring claim is not sufficiently supported by the record evidence. First, Plaintiffs do not argue that CFLC failed to comply with federal regulations upon hiring Swartz. In fact, Plaintiffs agree that CFLC complied with and exceeded the hiring requirements of the regulations. Dkt. No. 55-1 ¶¶ 53-61. Plaintiffs have presented no evidence to show that Swartz was not in full compliance with the qualification requirements of the Federal Motor Carrier Safety Regulations. As for Swartz's driving record, Plaintiffs show only that Swartz was involved in a single-vehicle rollover accident in 2008 and a backing accident in 2012, neither of which involved personal injuries. Indeed, Plaintiffs admit Swartz was an experienced truck driver when CFLC hired him. Dkt. No. 55-1 ¶ 36. The Court finds these two accidents do not meet the "clear and convincing" evidence of an entire want of care or conscious indifference to consequences on the part of CFLC required to warrant imposition of punitive damages against it for

14

negligently hiring Swartz. Defendant CFLC's motion for summary judgment is **GRANTED** as to this claim.

### 2. Negligent Supervision, Training, Retention and Entrustment Claims

The Court comes to the opposite conclusion with regard to Plaintiffs' remaining negligence claims. In addition to the two accidents referenced above which occurred before CFLC hired Swartz, Plaintiffs presented evidence of a traffic citation Swartz received in December 2013—while performing work for CFLC—for making an improper left turn and bumping into another vehicle. Plaintiffs have also shown that, as a result of the December 2013 incident, CFLC's safety director, Mark Darling, identified the need to train Swartz on "space management, left turns, following too closely, speeding," but did not. Dkt. No. 34-9 at 28-30, 38. The Court finds that Plaintiffs have presented sufficient evidence to raise the presumption of a conscious indifference to consequences on the part of CFLC such that a jury should decide whether punitive damages are appropriate. A jury could find the three incidents on Swartz's driving record—particularly the December 2013 incident which was near in time and similar in nature to the accident at issue in this case—coupled with CFLC's identification of the need to train Swartz and failure to do so, warrant an award of punitive damages. Defendant CFLC's motion for summary judgment as to

AO 72A
(Rev. 8/82)

Plaintiffs' claims for negligent supervision, training, retention, and entrustment, as well as Plaintiffs' claims for punitive damages, is **DENIED**.

### B. Plaintiffs' Claims for Attorneys' Fees and Costs Under O.C.G.A. § 13-6-11 Against CFLC

Plaintiffs argue that Defendant CFLC will not meet its burden of proving the affirmative defense of contributory negligence at trial. Plaintiffs contend Defendants' only contention of contributory negligence on Plaintiff Hamlett's part is that he failed to see the top of the tractor-trailer driven by Swartz as it cut across traffic. Dkt. No. 55 at 6. Plaintiffs argue that "[e]ven though this is a clear liability case, Plaintiffs have had to file a lawsuit, hire liability and damages experts, depose known witnesses, and travel to Florida twice, among others." Id. at 12.

Georgia law allows recovery of litigation expenses when a defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. O.C.G.A. § 13-6-11. A jury may award litigation expenses for a defendant's stubborn litigiousness or causing unnecessary trouble and expense when no bona fide controversy or dispute existed as to defendant's liability. King Indus. Realty, Inc. v. Rich, 481 S.E.2d 861, 867 (Ga. Ct. App. 1997). Generally, whether a bona fide controversy exists is a question for the

AO 72A
(Rev. 8/82)

jury. <u>Pace v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, No. 1:12-CV-3096-AT, 2014 WL 4976773, at *21 (N.D. Ga. Aug. 21, 2014), reconsideration denied, 2014 WL 11858156 (N.D. Ga. Dec. 18, 2014). "However, if there is no evidence of bad faith or stubborn litigiousness, a trial court should grant a defendant's motion for summary judgment on a claim for attorney fees." <u>Id.</u> (quotation marks omitted) (citing <u>Rigby v. Flue-Cured Tobacco Co-op.</u>, 755 S.E.2d 915, 926 (Ga. Ct. App. 2014)).

In short, Plaintiffs have not met their burden under O.C.G.A. § 13-6-11 to warrant an award of attorneys' fees or expenses of litigation against CFLC. The record evidence supports the existence of a bona fide controversy, i.e. whether Plaintiff failed to take precautions for his own safety, and, by extension, whether he is partially responsible for his own injuries. Lieutenant Riggs, who was traveling on Georgia 144 in the same direction and around the same time as Plaintiff, testified that Swartz was moving very slowly when he began to make his left turn. Dkt. No. 34-1 ¶¶ 9-11; Dkt. No. 55-1 ¶¶ 9-11. Staff Sergeant Loudermilk, who was driving a pick-up truck east on Georgia 144 in the same direction as Plaintiff, testified that the tractor trailer was taller than any other vehicle in front of him—about 10 to 15 vehicles from the accident location. Dkt. No. 34-1 ¶¶ 15-17, 20; Dkt. No. 55-1 ¶¶ 15-17, 20. Defendants have a right to defend themselves.

AO 72A
(Rev. 8/82)

Contrary to Plaintiffs' contention, there is nothing so unbelievable about Defendants' affirmative defense argument that warrants a finding of bad faith or stubborn litigiousness on their part. Thus, Defendant CFLC's motion for summary judgment as to Plaintiffs' claims for attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11 is **GRANTED**.[2]

## II. Swartz's Partial Motion for Summary Judgment

Swartz moves for partial summary judgment on Plaintiffs' claims for punitive damages and attorneys' fees and costs under O.C.G.A. § 13-6-11. For the reasons discussed in part I *supra*, Defendant Swartz's motion for summary judgment is **DENIED** as to Plaintiffs' claim for punitive damages and **GRANTED** as to Plaintiffs' claim for attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11.

## III. PIC's Motion for Summary Judgment

PIC moves for summary judgment on all counts alleged against it by Plaintiffs, including suit in direct action under O.C.G.A. § 40-2-140, attorneys' fees and costs under O.C.G.A § 13-6-11, and punitive damages. Dkt. No. 40; see also dkt. no. 1-1 ¶¶ 29, 33, 34.

---

[2] Plaintiffs note in their response brief that they understand Defendant CFLC's and Defendant Swartz's motion for partial summary judgment on fees and expenses to focus solely on Plaintiffs' claims under O.C.G.A. § 13-6-11. Defendants do not dispute this contention. Therefore, there is no need for the Court to address Plaintiffs' Offer of Settlement served upon Defendants pursuant to O.C.G.A. § 9-11-68.

AO 72A
(Rev. 8/82)

PIC first argues that summary judgment is appropriate because the direct action statute cited by Plaintiffs permits joinder only of an "insurance carrier" of an *intrastate* motor carrier, not an insurance carrier of an *interstate* motor carrier like CFLC. Next, PIC argues that even if CFLC were an intrastate carrier, PIC still cannot be joined as a defendant to this lawsuit because PIC is CFLC's excess insurance carrier and thus not an "insurer" subject to direct action under the statute. Finally, PIC moves for summary judgment on claims for punitive damages and attorneys' fees and costs, arguing there is no evidence to support those claims. Because the Court finds PIC's excess insurance carrier argument dispositive of Plaintiffs' claims against it, the Court need not address PIC's other arguments.

A. Whether PIC is an excess liability insurer

PIC argues that it cannot be subject to direct action because it is an excess insurer, not an "insurance carrier" under the statute. See Dkt. No. 40-1 at 2; see also O.C.G.A. § 40-2-140.

"The general rule in Georgia is that 'a party may not bring a direct action against the liability insurer of the party who allegedly caused the damage unless there is an unsatisfied judgment against the insured or it is specifically permitted either by statute or a provision in the policy." McGill v. Am.

19

Trucking & Transp. Ins. Co., 77 F. Supp. 3d 1261, 1264-65 (N.D. Ga. 2015) (citing Hartford Ins. Co. v. Henderson & Son, Inc., 371 S.E.2d 401 (Ga. 1988)). Georgia's "direct action statutes—which permit an injured plaintiff to join a motor carrier's insurer in an action against the insured motor carrier—were designed 'to protect members of the general public against injuries caused by the negligence of a Georgia motor carrier.'" Id. (quoting Sapp v. Canal Ins. Co., 706 S.E.2d 644, 646 (Ga. 2011)). "The insurance carrier is not, in reality, a separate party for purposes of liability, but, rather, is equivalent to a provider of a substitute surety bond, creating automatic liability in favor of a third party who may have a claim for damages for the negligence of the motor common carrier." Id. (alteration and internal quotation marks omitted) (quoting Andrews v. Yellow Freight Sys., Inc., 421 S.E.2d 712, 713 (Ga. 1992)).

To establish direct action, (1) the subject carrier must be a "motor carrier" as defined by the direct action statutes; (2) the plaintiff must have sustained an actionable injury; and (3) the insurer must be an "insurance carrier." Id. (citing O.C.G.A. §§ 40-1-112, 40-2-140(d)(4); Sapp v. Canal Ins. Co., 706 S.E.2d 644, 647 (Ga. 2011); Lewis v. D. Hays Trucking, Inc., 701 F. Supp. 2d 1300, 1319 (N.D. Ga. 2010)).

AO 72A
(Rev. 8/82)

PIC does not dispute that CFLC is a "motor carrier," nor does it contend Plaintiffs have failed to bring a cause of action for an actionable injury under the direct action statute. However, PIC maintains that it is not an "insurance carrier" but rather an excess liability insurer not subject to direct action. Dkt. no. 40-1 at 9-10. "[I]t is well established that a motor carrier's excess liability insurer is not subject to direct suit under the direct action statutes." McGill, 77 F. Supp. 3d at 1267 (citing Jackson v. Sluder, 569 S.E.2d 893 (Ga. Ct. App. 2002); Werner Enters. Inc. v. Stanton, 690 S.E.2d 623 (Ga. Ct. App. 2010)). "This is true regardless of whether the primary liability protection is covered by an insurance policy or by a self-insurance plan." Id. (citing Werner Enters., Inc., 690 S.E.2d at 623).

The Eleventh Circuit has recently stated:

> "Excess or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted." U.S. Fire Ins. Co. v. Capital Ford Truck Sales, Inc., 257 Ga. 77, 355 S.E.2d 428, 431 (1987). Thus, excess policies, by their very nature, contain an exhaustion requirement. Georgia courts have repeatedly recognized the validity of excess policies and the exhaustion requirements necessarily embedded within those policies. See, e.g. Jackson v. Sluder, 256 Ga. App. 812, 569 S.E.2d 893, 898 (2002) ("[E]xcess insurance coverage is not regarded as collectible insurance until the limit of liability of the primary policy is exhausted." (quotation marks omitted)); Atl. Wood Indus. v. Lumbermen's Underwriting All., 196 Ga. App. 503, 396 S.E.2d 541, 545 (1990) (concluding that the exhaustion

of the limits of a primary liability policy was "a
condition precedent" to recovery under an excess
policy). This Court has determined that, under
Georgia law, when an excess policy clearly sets a
threshold starting point for payment, the contract is
unambiguous and must be enforced. See Garmany v.
Mission Ins. Co., 785 F.2d 941, 945–46 (11th Cir.
1986).

Coker v. Am. Guarantee & Liab. Ins. Co., No. 15-14070, 2016 WL

3342621, at *6 (11th Cir. June 15, 2016). "Georgia courts have

consistently determined the duty of an excess insurer

exclusively by the terms of its insurance contract." Wellons,

Inc. v. Lexington Ins. Co., 931 F. Supp. 2d 1228, 1245 (N.D. Ga.

2013) (citing Yeomans & Assocs. Agency, Inc. v. Bowen Tree

Surgeons, Inc., 618 S.E.2d 673 (Ga. Ct. App. 2005) (holding that

"[a]n insurance policy is simply a contract, the provisions of

which should be construed as any other type of contract")),

aff'd, 566 F. App'x 813 (11th Cir. 2014).

Here, the subject insurance contract, entitled "Excess

Contract," requires PIC to "indemnify [CFLC as the named

insured] for ultimate net loss, less the self retention." Dkt.

No. 40-2 at 4. The policy states that it "is an excess

contract, and it is excess of the self retention, as set forth

in the Declarations." Id. The Declarations state that the

"Self Retention" is "$250,000 per occurrence." Id. at 3. In

light of the clear and unambiguous language of the controlling

insurance contract, the Court finds that PIC is CFLC's excess

insurance carrier and is thus not subject to a direct pre-judgment cause of action by Plaintiffs. Though Plaintiffs argue that various extrinsic evidence contradicts PIC's excess contract,[3] the Court is not permitted to consider extrinsic evidence when interpreting an unambiguous contract. Stewart v. KHD Deutz of Am., Corp., 980 F.2d 698, 702 (11th Cir. 1993) ("Under the decisions of this court and the laws of Georgia, extrinsic evidence is not admissible to contradict the terms of an unambiguous contract."). Moreover, extrinsic evidence "is not even admissible to establish ambiguity; any ambiguities must be created by the language of the contract itself." Id. Additionally, Plaintiffs' argument that CFLC's "self-insured retention is more akin to a deductible," dkt. no. 58 at 13, has already been rejected by the Georgia Court of Appeals in Werner. "The statute here specifically permits self-insurance in lieu of a policy of indemnity insurance, putting both forms of insurance on equal footing, and the excess insurance cannot be collected until the self-insurance limit . . . is exhausted." 690 S.E.2d at 625; see also id. (rejecting plaintiffs' argument that "self-insurance is not insurance because there is no third party to assume the risk"). Though Werner analyzed language contained in

---

[3] Plaintiffs assert that CFLC's filings with the Federal Motor Carrier Safety Administration (FMCSA) indicate that the PIC policy is CFLC's primary insurance, that CFLC's representative testified the PIC policy is an "auto liability policy," that CFLC was not qualified as a self-insurer, and that Defendants listed PIC as the primary insurance company in their FMCSA insurance disclosures. See Dkt. No. 58 at 11.

AO 72A
(Rev. 8/82)

a different direct action statute, O.C.G.A. § 46-7-12, the statutory language is the same. Case law makes clear that excess insurers may not be sued in a direct action. <u>Wimberly v. Miller</u>, No. 14A50337-7 (DeKalb Cnty. State Ct. Nov. 12, 2014), dkt. no. 63-1 at 2. Accordingly, Plaintiffs cannot join PIC, an excess insurance carrier, as a defendant via the direct action statute, and PIC's motion for summary judgment as to Plaintiffs' claims is **GRANTED**.

### B. Plaintiffs' Claims for Punitive Damages and Attorneys' Fees and Costs

Though the Court need not reach the merits of Plaintiffs' claims for punitive damages and attorneys' fees and costs against PIC, it will do so out of an abundance of caution. PIC contends Plaintiffs have presented no evidence that it "acted with conduct rising to a level warranting punitive damages," or "acted in bad faith in connection with the accident." Dkt. No. 40 at 11. PIC argues that because it has litigated only bona fide disputes, Plaintiffs' claims for punitive damages and attorneys' fees fail. <u>Id.</u> The Court agrees, particularly in light of the Court's granting PIC's motion for summary judgment.

### CONCLUSION

Defendant CFLC's motion for partial summary judgment (dkt. no 34) is **GRANTED** as to Plaintiffs' claims of negligent hiring and Plaintiffs' claim for attorneys' fees and expenses; **DENIED**

AO 72A
(Rev. 8/82)

as to Plaintiffs' claims of negligent supervision, training, retention, and entrustment; and **DENIED** as to Plaintiffs' claim for punitive damages. Defendant Swartz's motion for partial summary judgment (dkt. no 35) is **GRANTED** as to Plaintiffs' claim for attorneys' fees and expenses and **DENIED** as to Plaintiffs' claim for punitive damages. Defendant PIC's motion for summary judgment (dkt. no. 40) is **GRANTED** in its entirety.

    **SO ORDERED**, this 30th day of September, 2016.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)